## HARRISON v. BEHM.
### No. 14670.

Court of Appeal of Louisiana. Orleans.
May 21, 1934.

Hopkins & Talbot, of New Orleans, for appellant.

A. Giffen Levy, of New Orleans, for appellee.

*Rehearing denied June 11, 1934.

WESTERFIELD, Judge.

Plaintiff is a buyer and the defendant a dealer in alligator skins. On May 14, 1932, defendant gave plaintiff a verbal order for 1,500 Louisiana alligator skins and on May 19, 1932, for 600 more, agreeing to pay a fixed price for the skins if delivered on the first order by May 19, 1932, and on the second order by May 26, 1932. Acting under this verbal arrangement, plaintiff acquired and delivered to defendant 1,393 skins on the first order and 226 skins on the second order within the time agreed upon. Defendant, however, refused to accept the skins upon the ground that they were the skins of Florida and not Louisiana alligators, whereupon plaintiff sold the skins to other parties for $268.37 less than defendant had agreed to buy them for, and thereafter brought this suit for that amount as damages for the breach of the contract.

There was judgment below in favor of defendant, dismissing plaintiff's demand, and plaintiff has appealed.

On the trial of the case defendant denied the existence of the contract, but that contention has been abandoned on appeal. The sole question now remaining, it is agreed by both parties, is the character of the skins tendered by plaintiff, i. e., were they Louisiana or Florida skins.

It appears that there is a marked difference between the Florida and Louisiana alligators, in so far as their hide is concerned, and the defendant deals only in Louisiana skins. This difference is stated by the Louisiana Department of Conservation, in its Bulletin No. 18, issued in January, 1931, as follows:

"The Florida skins are longer in the body —measured from the fore legs to the hind legs—than those from Louisiana or Mexico and consequently are largely in demand by manufacturers of large handbags. They also have a larger number of so-called 'buttons' or 'corn marks' on the inside or under-surface of an equal number of scutes resulting from imbedded horn-like tissues in the center of those scales. These increase the difficulty in tanning the skins and detract somewhat from the appearance of the finished article, and for this reason the Florida skins are ordinarily the cheapest on the market. The farther south the skins are secured in Florida the greater the number of 'corn marks' and those from the vicinity of Key West are almost valueless for this reason.

"The Louisiana skins differ from those of Florida in the absence of the 'corn marks', and from both the Florida and Mexican skins in being more pliable and having the scales more artistically curved and shaped. Consequently Louisiana skins are preferred for such small articles as cardcases and pocketbooks and usually sell at the highest prices. Skins secured in Mississippi and Texas are similar to those secured in Louisiana, while those from Georgia and South Carolina are similar to those from Florida, except that the 'corn markings' are not so numerous. All of the Louisiana skins show greater uniformity of coloring, being of a bluish black on the upper surface and a peculiar bluish white on the underside. The tanning and finishing processes give the commercial article its yellowish color, it might be explained. "Only the 'bellyskin' is used. The skin is removed soon after the killing, as putrefaction sets in almost immediately in our warm climate, and the value of the skin is thus depreciated. The 'bellyskin' is removed by two longitudinal incisions just below the horny portion of the back; and the flesh side of the skin thoroughly rubbed with salt and rolled up with the salted side inside, and shipped to the market. Care is taken not to cut the hide since small cuts not noticed in the raw skins become conspicuous when it is tanned and dressed. Louisiana skins obtain the highest price in the markets and those from Florida the lowest."

The record abounds with conflicting testimony as to whether the skins tendered contained "buttons" and other indicia of their origin. Mr. Percy Viosca, Jr., a noted biologist, testified that an alligator is not migratory and spends his entire life within a short radius of his home. It appears, therefore, that alligators which are trapped or killed in Louisiana would, except under very extraordinary circumstances, be native animals. The testimony of the plaintiff and his witnesses is to the effect that all of the skins were acquired in Louisiana. In one of the sacks, however, a shipping tag, with the address of a Florida alligator dealer was found, but this circumstance is explained by plaintiff as being due to the custom of using sacks containing alligator skins over and over again and the failure to remove the tag when this particular sack was used for the Louisiana skins. There is also considerable affirmative testimony concerning the presence of "buttons" on the skins, as well as other characteristics of Florida alligators. On the whole, the best that can be said of plaintiff's case is that the record does not affirmatively show the tender of Florida skins on his contract, but, on the other hand,

neither does it establish the fact that the skins were Louisiana skins, the kind he was obligated to deliver.

Finally, we are definitely of the opinion that a sufficient showing has not been made to enable us to say that the ruling of the trial court on the question of fact involved was clearly erroneous.

For the reasons assigned, the judgment appealed from is affirmed.